(USAO GAN 6/10) Search Warrant

**FILED IN CHAMBERS**
U.S.D.C. – Rome

JUL  5 2019

JAMES N. HATTEN, Clerk
By: _____

# United States District Court
## NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

Three Electronic Devices believed to be used by Jorge Armando AVALOS-Menera

APPLICATION AND
AFFIDAVIT FOR
SEARCH WARRANT
Case number: 4:19-MC-40

I, Christopher Goode, being duly sworn depose and say:

I am a Special Agent of the Drug Enforcement Administration and have reason to believe that in the property described as:

> Three Electronic Devices believed to be used by Jorge Armando AVALOS-Menera, as further described in Attachment A (incorporated by reference)

in the Northern District of Georgia there is now concealed certain information and certain data, namely,

> see Attachment B (incorporated by reference),

which constitutes evidence of a crime and property designed for use, intended for use, or used in committing a crime, concerning violations of Title 21, United States Code, Section(s) 841(a)(1), 841(b)(1)(A), and 846. The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT (incorporated by reference)

Continued on attached sheet made a part hereof.

Sworn to before me, and subscribed in my presence

July ~~April~~ 5, 2019
Date

Walter E. Johnson
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer
AUSA Teresa Stolze

_____
Signature of Affiant
Christopher Goode
Atlanta, Georgia
City and States

_____
Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Christopher Goode, a Special Agent with the Drug Enforcement Administration ("DEA"), United States Department of Justice, being duly sworn under oath, hereby state that the following is true and correct to the best of my knowledge and belief:

INTRODUCTION

1.  This Affidavit is made in support of search warrants for the following electronic devices (collectively the "**SUBJECT TELEPHONES**") described further in **Attachment A**, incorporated herein by reference:

    **SUBJECT TELEPHONE #1**: Pink Samsung Galaxy S9 Cell Phone; IMEI# 356917090977716; seized from Jorge Armando AVALOS-Menera's person as he was detained and arrested walking off of the property of 308 Williams Road, Dallas, GA 30132 on June 26, 2019; the cell phone is currently stored at the DEA Non-Drug Evidence Vault, 75 Ted Turner Drive, Atlanta, Georgia, 30303.

    **SUBJECT TELEPHONE #2**: Pink LG-M430 Cell Phone; IMEI# 356114085955820; seized from Jorge Armando AVALOS-Menera's person as he was detained and arrested walking off of the property of 308 Williams Road, Dallas, GA 30132 on June 26, 2019; the cell phone is currently stored at the DEA Non-Drug Evidence Vault, 75 Ted Turner Drive, Atlanta, Georgia, 30303.

    **SUBJECT TELEPHONE #3**: "blackphone" Cell Phone with IMEI#: 359196060010595; seized from Jorge Armando AVALOS-Menera's person as he was detained and arrested walking off of the property of 308 Williams Road, Dallas, GA 30132 on June 26, 2019; the cell phone is currently stored at the DEA Non-Drug Evidence Vault, 75 Ted Turner Drive, Atlanta, Georgia, 30303.

2.  I seek authorization for a forensic examination/search of the **SUBJECT TELEPHONES** (as described in **Attachment A**) for the purpose of retrieving electronically stored data particularly described in **Attachment B**.

3.  This warrant would authorize the full and comprehensive forensic examination of the **SUBJECT TELEPHONES** for the purpose of identifying electronically stored information and data particularly described in **Attachment B**. In my training and experience,

I know that the **SUBJECT TELEPHONES** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state, as they were when the devices first came into law enforcement possession.

4. Based on my training and experience and on the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that presently concealed in the **SUBJECT TELEPHONES** is information and data described in **Attachment B,** incorporated herein by reference, which may constitute evidence of a crime, contraband, fruits of crimes, or other items illegally possessed, or property designed for use, intended for use, or used in committing violations of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 843(b), and 846.

## AFFIANT'S BACKGROUND

5. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). I am therefore an officer of the United States who is empowered to conduct investigations of, and to make arrest for, the offenses enumerated in Title 18, United States Code, Section 2516.

6. I am employed as a Special Agent with the DEA and have been so employed since May 2018. I am currently assigned to the DEA's Atlanta Division, Strike Force Group 1. Prior to becoming a DEA Special Agent, I was employed as a law enforcement officer for the Mount Pleasant Police Department ("MPPD") from August 2011 to April 2018. In September of 2013, I was assigned as a Detective in the MPPD's Narcotics Unit. In January 2017, I was assigned to DEA's Charleston Resident Office as a deputized Task Force Officer.

7. During my tenure as a police officer and narcotics detective, I received over 300 hours of specialized narcotics training through various programs, which are recognized by

the South Carolina Criminal Justice Academy, and through various courses with the DEA's High Intensity Drug Trafficking Area ("HIDTA") program. I have also received advanced training and certification in the use of Cellebrite mobile forensics.

8. Upon joining the DEA, I received approximately 18 weeks of training at the DEA Training Academy in Quantico, Virginia. This training addressed the methods by which drug traffickers possess and distribute controlled substances; the manner and means in which they conceal and launder the proceeds from the distribution of controlled substances; the manner and means in which they protect their proceeds and their controlled substances; and the manner and means by which drug traffickers attempt to avoid law enforcement detection of their activities.

9. During my law enforcement career, I have been the affiant or have assisted in writing and/or executing in excess of 100 search and arrest warrants pertaining to the seizure of all types of criminal evidence such as: illegal drugs, drug paraphernalia, drug records, drug proceeds, and evidence of other types of crimes. Additionally, I have arrested or participated in the arrests of numerous individuals for their violations of federal and/or state narcotics laws. In connection with those investigations, I have conducted multiple undercover operations, controlled drug transactions with the use of cooperating sources, surveillance operations, informant/suspect debriefs and interviews, and electronic surveillance to include participating in wiretap investigations; obtained pen registers/trap and trace devices; and secured relevant information using numerous other investigative techniques, including the use of Cellebrite mobile phone extractions.

## DRUG TRAFFICKING PRACTICES

10. I have conducted investigations involving unlawful possession, importation, possession with intent to distribute, and distribution of controlled substances and conspiracies regarding the same. Based on my participation in these investigations, training, experience, conversations with other law enforcement officers and agents, and my debriefings with narcotics offenders, I know that the following are common practices of narcotics traffickers:

   a. Many cellular telephones currently have advanced capabilities, including: internet browsing, text and e-mail, photography and video storage, Global Positioning System ("GPS") navigation, notes, calendars, and data file storage.

   b. Drug traffickers frequently use cellular telephones and keep lists of names and telephone numbers of customers, suppliers, and conspirators in the electronic address books of their cellular telephones. Such cellular telephones also will carry information in a SIM ("Subscriber Identity Module") or SD ("Secure Digital" memory) card or some other type of electronic storage card that will reveal the number of the cellular telephone and other information leading to the identity of the user.

   c. I am aware, through training and experience, that drug traffickers use cellular telephones to communicate with each other via voice, direct connect, text message, and e-mail; store valuable data such as names, addresses, and telephone numbers of conspirators; obtain and store directions and maps; maintain photographs of drug trafficking associates and activities; search the internet; and capture audio, image, and video files. Records of these activities are often stored in the memory of cellular telephones.

d.  Furthermore, I know that it is common for drug traffickers to possess and use multiple cellular telephones to facilitate their unlawful conduct. Indeed, it is my experience that narcotics distributors purposefully use multiple communication devices so as to not alert law enforcement to the complete scope of their own and/or their conspirators' illicit conduct in the event that their communications are being intercepted. By way of example only, a drug trafficker may have one cellular telephone used to call his/her drug source(s) of supply, another telephone used to call customers, and yet another for personal use. In short, cellular telephones are vital instruments to drug traffickers.

e.  Drug traffickers keep their devices on their person or near their person while conducting their illicit activities and use their devices to communicate with and direct the activities of customers, couriers, suppliers, and conspirators.

f.  Drug trafficking is commonly an activity that takes place over an extended period and extensive planning, coordination, and communication often occurs between sellers, buyers, and middlemen before, during, and after drug transactions.

## SOURCES OF INFORMATION

11. The information set forth in this Affidavit includes information known to me as well as information provided by other federal and local law enforcement officers and other sources of information. I have set forth only the facts necessary to establish probable cause to believe that the electronic evidence described in Attachment A is currently present in the **SUBJECT TELEPHONES**.

12. Unless otherwise noted, when I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay

knowledge of the statement) with whom I have spoken or whose report I have reviewed. Wherever in this Affidavit I state a belief, such belief is based on my training and experience and the information obtained through this investigation.

## FACTUAL SUMMARY – PROBABLE CAUSE BASIS

13. On June 25, 2019, agents with the Paulding County Drug Task Force (DTF) received information regarding possible methamphetamine manufacturing and distribution at a residence at 809 Williams Road, Dallas, GA, 30132. DTF agents then contacted DEA Atlanta Strike Force Group 1 regarding the investigation.

14. On June 26, 2019, DTF agents sought and received a search warrant from Paulding County Magistrate Court for the premises at 809 Williams Road, Dallas, GA, 30132 (search warrant 19-SW-000126).

15. In anticipation of executing the state search warrant at the residence, DTF agents began surveillance on the property and observed two Hispanic males arrive at the residence in a white 2003 GMC Sierra truck with a camper and trailer. Another Hispanic male walked out of the residence, made contact with the two subjects in the truck, and unlocked the gate to allow them to pull the GMC Sierra truck down the driveway.

16. Surveillance agents observed one of the Hispanic males, later identified as Daniel LANDA-Duarte, walk outside of the house carrying brown boxes with orange writing on the side. DTF agents observed Daniel LANDA-Duarte carry the boxes back and forth between house and the white GMC truck. Shortly after, another one of the previously observed Hispanic males, later identified as Mauricio DOMINGUEZ-Vazquez, got into the white GMC truck and drove away from the residence.

17. DTF agents and officers maintained surveillance on the white GMC truck driven by DOMINGUEZ-Vazquez and Paulding County Deputies conducted a traffic stop on the vehicle a short distance down the road based on the pending execution of the search warrant and for a seatbelt violation. During the traffic stop, DOMINGUEZ-Vasquez denied officers consent to search the vehicle. When officers called for a canine unit to assist, DOMINGUEZ-Vazquez attempted to flee on foot but was apprehended and arrested. Deputy Leholm stated that DOMINGUEZ-Vazquez attempted to make a phone call on his black LG cell phone with a blue case before attempting to flee on foot. After DOMNIGUEZ-Vazquez was apprehended, a black LG cell phone with a blue case was found on DOMNIGUEZ-Vazquez's person during a search. Furthermore, during a search of the GMC truck, officers located four brown Home Depot boxes in the bed of the truck containing multiple plastic bags of crystal like substance, believed to be crystal methamphetamine, weighing approximately 42.7 gross kilograms. The suspected methamphetamine located in the GMC truck field tested presumptive for the presence of methamphetamine. The Home Depot boxes appeared to be the same boxes with orange writing that the agents observed Daniel LANDA-Duarte carrying earlier from the residence. Officers also located a second cell phone (blue and black Motorola) inside the White GMC truck near the driver's seat. DTF agents stated they also located a notebook which appeared to be used as a drug ledger in the GMC truck.

18. During the traffic stop and arrest of DOMINGUEZ-Vasquez, the Paulding County Special Weapons and Tactics (SWAT) Team was preparing to execute the search warrant at 809 Williams Road. While in route, surveillance units observed two Hispanic males, Jorge Armando AVALOS-Menera ("AVALOS-Menera") and LANDA-Duerta, walking away from the residence, towards the roadway. Officers made contact with the both subjects and

they were detained and subsequently arrested after the execution of the search warrant. DTF Detective William Chappell located **SUBJECT TELEPHONE #1, SUBJECT TELEPHONE #2,** and **SUBJECT TELEPHONE #3** on AVALOS-Menera's person and one cell phone (Alcatel black cell phone with case) on LANDA-Duerta's person.

19.     The Paulding County SWAT team then executed the search warrant at 809 Williams Road and upon entry immediately recognized the odor of chemicals and observed signs of a methamphetamine conversion lab. After securing the residence, the scene was turned over to Narcotics Investigators.

20.     Agents requested the assistance of the DEA Clan Lab Team to process the methamphetamine conversion lab inside the residence. Throughout the first floor of the residence and within plain sight in common areas, agents located multiple five gallon buckets, twenty gallon drums, screens, propane burners, and multiple gallons (estimated 75) of purported liquid methamphetamine. Agents also located and seized approximately 49.6 gross kilograms of crystal methamphetamine, from inside the residence. The suspected crystal methamphetamine located at the residence field tested presumptive for the presence of methamphetamine. AVALOS-Menera and LANDA-Duerta were subsequently arrested for possession with intent to distribute a controlled substance (methamphetamine).

21.     Agents reviewed the contents of the notebook drug ledger and observed multiple addresses and phone numbers listed throughout the ledger. Agents also observed several pages showing what appears to be various prices, dates, and numbers with some names to associate the amount owed and/or paid.

22.     Based upon the above, I believe that there is probable cause to believe that the defendants, Jorge Armando AVALOS-Menera, Daniel LANDA-Duerte, and Mauricio

DOMINGUEZ-Vazquez did knowingly and intentionally conspire to possess with intent to distribute a controlled substance, that is, at least 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 843(b), and 846.

23. DEA agents took the **SUBJECT TELEPHONES** to the DEA Non-Drug Evidence vault, 75 Ted Turner Drive, Atlanta, Georgia, 30303, where they are presently stored.

## INFORMATION ABOUT ELECTRONIC DEVICES

*TECHNICAL TERMS*

24. Based on my training, experience, research, and consultation with IT and other DEA personnel, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones also may include

Case 4:19-mc-00040-WEJ   Document 1   Filed 07/05/19   Page 11 of 18

Global Positioning System ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media also can store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved

in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A Personal Digital Assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication device and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs also may include GPS technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet,

connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

*CAPABILITIES OF CELLULAR TELEPHONES*

25.     Based on my training, experience, research, and consultation with IT and other DEA personnel, I know that cellular telephones, like the **SUBJECT TELEPHONES**, have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and/or PDAs as well as providing connectivity to the Internet.  In my training, experience, research, and consultation with IT and other DEA personnel, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices and the criminal nature for which they were using the devices.

*ELECTRONIC STORAGE AND FORENSIC ANALYSIS*

26.     Based on my training, experience, research, and consultation with IT and other DEA personnel, I know that electronic devices, such as the **SUBJECT TELEPHONES**, can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices.  This information can sometimes be recovered with forensics tools.

*FORENSIC EVIDENCE*

27.     As further described in Attachment A, the applications seek permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrants, but also forensic evidence that establishes how the **SUBJECT TELEPHONES** were used, the purpose of their use, who used them, and when.  There is

probable cause to believe that this forensic electronic evidence might be on the **SUBJECT TELEPHONES** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device also can indicate who has used or controlled the devices. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how the electronic device was used, the purpose of its use, who used it, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrants.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

*NATURE OF EXAMINATION*

28. Based on the foregoing and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit the examination of the **SUBJECT TELEPHONES** consistent with the warrants. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrants.

*MANNER OF EXECUTION*

29. Because these warrants seek only permission to examine the **SUBJECT TELEPHONES** already in law enforcement's possession, the execution of these warrants do not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrants at any time in the day or night.

CONCLUSION

30. Based on the foregoing, I believe that there is probable cause to believe that the **SUBJECT TELEPHONES** contain evidence related to the possession with intent to distribute controlled substances and conspiracy to possess with intent to distribute controlled substances, and/or evidence of violations of Title 21, United States Code, Sections 841, 843(b), and 846, as set forth in **Attachment A**, which is attached hereto and incorporated herein by reference.

**END OF AFFIDAVIT**

## ATTACHMENT A

### Property to Be Searched

This warrant applies to the following electronic devices (collectively, the **SUBJECT TELEPHONES**):

**SUBJECT TELEPHONE #1**: Pink Samsung Galaxy S9 Cell Phone; IMEI# 356917090977716; seized from Jorge Armando AVALOS-Menera's person as he was detained and arrested walking off of the property of 308 Williams Road, Dallas, GA 30132 on June 26, 2019; the cell phone is currently stored at the DEA Non-Drug Evidence Vault, 75 Ted Turner Drive, Atlanta, Georgia, 30303.

**SUBJECT TELEPHONE #2**: Pink LG-M430 Cell Phone; IMEI# 356114085955820; seized from Jorge Armando AVALOS-Menera's person as he was detained and arrested walking off of the property of 308 Williams Road, Dallas, GA 30132 on June 26, 2019; the cell phone is currently stored at the DEA Non-Drug Evidence Vault, 75 Ted Turner Drive, Atlanta, Georgia, 30303.

**SUBJECT TELEPHONE #3:** "blackphone" Cell Phone with IMEI#: 359196060010595; seized from Jorge Armando AVALOS-Menera's person as he was detained and arrested walking off of the property of 308 Williams Road, Dallas, GA 30132 on June 26, 2019; the cell phone is currently stored at the DEA Non-Drug Evidence Vault, 75 Ted Turner Drive, Atlanta, Georgia, 30303.

This warrant authorizes the full and comprehensive forensic extraction and examination of the **SUBJECT TELEPHONES** for the purpose of identifying any electronic evidence as described in Attachment B.

## ATTACHMENT B

The particular items to be seized from the **SUBJECT TELEPHONES** are as follows:

1. Any and all stored communications, data, and files stored in/on the **SUBJECT TELEPHONES** and/or the Subscriber Identity Module ("SIM"), from May 1, 2019, through the present day, which constitutes evidence of a violation of Title 21, United States Code, Sections 841(a), 841(b)(1)(A), 843(b), and 846, including, but not limited to:

   a. Contact information to include names, addresses, telephone numbers, email addresses, or other identifiers;

   b. Phone directory information;

   c. Content of stored text messages and messaging applications;

   d. Any text messages, email messages, chats, multimedia messages, messages through other installed applications or other electronic communications;

   e. Stored voice mail or other audio messages;

   f. Call log information, including missed, incoming and outgoing calls and any information associated with those numbers;

   g. Any Global Positioning Satellite (GPS) entries, records of Internet Protocol Connections, and location entries to include cell tower and WiFi entries;

   h. Photographs, videos, records, other electronic media which show the transportation, ordering, distribution, possession and sale of controlled substances and/or connection to known and as yet unidentified conspirators in the investigation;

   i. Any calendar, note password, and/or dictionary entries;

j. Any internet or browser entries or history;

k. Address and/or telephone and address books and other notes reflecting names, addresses (including email), and/or telephone numbers, showing the relationship between known and as yet unidentified conspirators in the investigation; and

l. Books, records, receipts, notes, correspondence, ledgers, and other documents and/or papers relating to DOMINGUEZ-Vazquez's, LANDA-Duarte's, or AVALOS-Menera's ownership, residency, or use of 809 Williams Road, Dallas, GA, 30132, White 2003 GMC Sierra DOMINGUEZ-Vazquez drove on June 26th, 2019, including bills, photographs, envelopes, keys, and personal papers.

m. Any system, data or configuration information contained within the device

2. Evidence of user attribution showing who used, owned, or accessed the **SUBJECT TELEPHONES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

For discovery and trial authentication purposes, DEA will maintain a full forensic copy of the **SUBJECT TELEPHONES**.

17